RECEIVED

AUG 25 2026

KELLY L. STEPHENS, Clerk

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | |
|---|---|
| **NATURAL RESOURCES DEFENSE COUNCIL, INC.,**<br><br>**Petitioner,**<br><br>**v.**<br><br>**ENVIRONMENTAL PROTECTION AGENCY,**<br><br>**Respondent.** | **Case No. __________** |

**PETITION FOR REVIEW**

Pursuant to Federal Rule of Appellate Procedure 15 and section 307(b) of the Clean Air Act, 42 U.S.C. § 7607(b), Natural Resources Defense Council, Inc. ("Petitioner"), petition this Court to review the Environmental Protection Agency's final agency action entitled "Air Plan Approval; Ohio; Source-Specific Non-CTG RACT" published at 91 Fed. Reg. 38517 (June 26, 2026). A copy of the final agency action is attached hereto as Attachment A. The agency docket numbers for the rule are EPA–R05–OAR–2025–0237; FRL–13273–02–R5.

Dated: August 25, 2026

Respectfully Submitted,

*/s/ Sarah A. Buckley*
Sarah A. Buckley
Abirami Vijayan
Natural Resources Defense Council
1152 15th St. NW, Suite 300
Washington, D.C. 20005
sbuckley@nrdc.org
avijayan@nrdc.org

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Petition for Review and Rule 26.1 Disclosure Statement of Petitioner is being served via First Class Mail to each of the following addresses on this 25th day of August, 2026:

Lee Zeldin
EPA Headquarters 1101A
United States Environmental Protection Agency
1200 Pennsylvania Ave., NW
Washington, DC 20460

Todd Blanche
Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

Sean Donahue, General Counsel
Office of General Counsel (MC 2310A)
United States Environmental Protection Agency
1200 Pennsylvania Ave, NW
Washington, DC 20460

Adam R.F. Gustafson, Assistant Attorney General
Energy and Natural Resources Division
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

Additionally, I hereby certify that a single copy of the foregoing Petition for Review and Rule 26.1 Disclosure Statement of Petitioner will be sent via certified mail, return receipt requested, to the following address once I obtain a copy time-stamped by the Clerk of the Court:

Correspondence Control Unit
Office of General Counsel (2311)
United States Environmental Protection Agency
1200 Pennsylvania Avenue, NW
Washington, DC 20460

Dated: August 25, 2026

Respectfully submitted,

*/s/ Sarah A. Buckley*
Sarah A. Buckley

# Attachment A

## DEPARTMENT OF HOMELAND SECURITY

### Coast Guard

### 33 CFR Part 165

**[Docket No. USCG–2026–0552]**

### Safety Zones; Annual Events Requiring Safety Zones in the Captain of the Port Lake Michigan Zone

**AGENCY:** Coast Guard, Department of Homeland Security.

**ACTION:** Notification of enforcement of regulation.

**SUMMARY:** The Coast Guard will enforce a safety zone for the Town of Dune Acres Independence Day Fireworks event on a portion of Lake Michigan in Dune Acres, Indiana. This action is necessary to protect personnel, vessels, and the marine environment from potential hazards created by the fireworks display. During the enforcement period listed below, entry into, transiting, or anchoring within the safety zone is prohibited unless authorized by the Captain of the Port Lake Michigan or a designated representative.

**DATES:** The regulation in 33 CFR 165.929 will be enforced from 8:45 p.m. through 9:30 p.m. on July 3, 2026, for the safety zone listed as Event 2 of Table 2 to § 165.929.

**FOR FURTHER INFORMATION CONTACT:** If you have questions about this notice of enforcement, call or email LT Kyle Goetz, Waterways Management Division, Marine Safety Unit Chicago, U.S. Coast Guard; telephone 630–986–2155, email *D09-SMB-MSUChicago-WWM@uscg.mil.*

**SUPPLEMENTARY INFORMATION:** The Coast Guard will enforce the regulations in 33 CFR 165.929 for the safety zone listed as Event 2 of Table 2 to § 165.929, for the Town of Dune Acres Independence Day Fireworks. This safety zone includes of all waters of Lake Michigan, from surface to bottom, within a 300-foot radius of the approximate launch position at 41°39.303′ N, 087°05.239′ W. These coordinates are based on the World Geodetic System (WGS 84)/North American Datum 83 (NAD 83). This safety zone will be enforced from 8:45 p.m. through 9:30 p.m. on July 3, 2026.

Pursuant to 33 CFR 165.929, all vessels must obtain permission from the Captain of the Port (COTP) Lake Michigan or his or her designated on-scene representative to enter, move within, or exit this safety zone during the enforcement times listed in this notice of enforcement. The designation of the COTP Lake Michigan's on-scene representative need not be in writing. Requests must be made in advance and approved by the COTP or his or her designated on-scene representative before transits are authorized. Approvals will be granted on a case-by-case basis. Vessels and persons granted permission to enter the safety and security zone shall obey all lawful orders or directions of the COTP Lake Michigan or designated on-scene representative.

In addition to this notification of enforcement in the **Federal Register**, the Coast Guard will provide the maritime community with notification of this enforcement period via Broadcast Notice to Mariners. The COTP Lake Michigan may be reached by contacting the Coast Guard Sector Lake Michigan Command Center at (833) 900–2247 or a designated on-scene representative via VHF–FM Channel 16.

**R. N. MACON,**

*CAPTAIN, U.S. Coast Guard, Captain of the Port, Lake Michigan.*

[FR Doc. 2026–12940 Filed 6–25–26; 8:45 am]

**BILLING CODE 9110–04–P**

---

## ENVIRONMENTAL PROTECTION AGENCY

### 40 CFR Part 52

**[EPA–R05–OAR–2025–0237; FRL–13273–02–R5]**

### Air Plan Approval; Ohio; Source-Specific Non-CTG RACT

**AGENCY:** Environmental Protection Agency (EPA).

**ACTION:** Final rule.

**SUMMARY:** The Environmental Protection Agency (EPA) is approving source-specific State Implementation Plan (SIP) revisions submitted by Ohio. These revisions address major source volatile organic compound (VOC) and nitrogen oxide ($NO_X$) reasonably available control technology (RACT) requirements for the Cleveland, OH Moderate nonattainment area (Cuyahoga, Geauga, Lake, Lorain, Medina, Portage, and Summit counties) for the 2015 ozone National Ambient Air Quality Standard (NAAQS or standard). The affected facilities include Lubrizol, Henkel, and Cleveland-Cliffs Cleveland Works. With this approval, Ohio has fully satisfied the Moderate area RACT requirements of the Clean Air Act (CAA) with respect to the 2015 ozone standard for the Cleveland area.

**DATES:** This final rule is effective on June 26, 2026.

**ADDRESSES:** The EPA has established a docket for this action under Docket ID No. EPA–R05–OAR–2025–0237. All documents in the docket are listed on the *https://www.regulations.gov* website. Although listed in the index, some information is not publicly available, *i.e.,* Confidential Business Information (CBI), Proprietary Business Information (PBI), or other information whose disclosure is restricted by statute. Certain other material, such as copyrighted material, is not placed on the internet and will be publicly available only in hard copy form. Publicly available docket materials are available either through *https://www.regulations.gov* or please contact the person identified in the **FOR FURTHER INFORMATION CONTACT** section for additional information.

**FOR FURTHER INFORMATION CONTACT:** Katie Caskey, Air and Radiation Division (AR18J), Environmental Protection Agency, Region 5, 77 West Jackson Boulevard, Chicago, Illinois 60604, telephone number: (312) 353–3490, email address: *caskey.kathleen@epa.gov.*

**SUPPLEMENTARY INFORMATION:** Throughout this document whenever "we," "us," or "our" is used, we mean the EPA.

### I. Background Information

On April 10, 2026, the EPA proposed to approve source-specific SIP revisions that address major source VOC and $NO_X$ RACT requirements for the Cleveland, OH 2015 ozone Moderate nonattainment area.[1] An explanation of the CAA requirements, a detailed analysis of the revisions, and the EPA's reasons for proposing approval were provided in the notice of proposed rulemaking and will not be restated in this action. The public comment period for this proposed rule closed on May 11, 2026. The EPA received one adverse comment.

*Comment:* The commenter asserted that the EPA failed to assess the emission impacts of potential RACT measures and did not explain the significance of the emission reduction potential for those measures for all the non-CTG sources in the proposal.

*Response:* The CAA does not require, and thus the proposal does not include, a separate, standalone evaluation of emission impacts for potential RACT measures.

CAA section 172(c)(1) requires the implementation of RACT measures as expeditiously as practicable and shall provide for attainment of the NAAQS.

[1] 91 FR 18349 (April 10, 2026).

Reductions in emissions from existing sources is part of that stated purpose, but the language does not specify or require an evaluation of the emissions impacts.

CAA section 182(b)(2) requires implementation of RACT for Moderate ozone nonattainment areas, and references CAA section 172(c)(1). The EPA has long defined RACT as the lowest emission limitation a source can meet through application of control technology that is reasonably available, considering technological and economic feasibility.[2]

Consistent with this definition, major source RACT is evaluated at the source level by determining whether additional control technologies are technologically feasible and economically reasonable for that source. Ohio evaluated various available control options for each source, including feasibility, emission reduction efficiency, and cost, and determined whether more stringent controls met this standard. Each of these analyses were considered by the EPA and were part of the docket for this rulemaking.

Emission reduction potential is inherently reflected in the evaluation of control technologies, including consideration of control efficiency; however, the CAA does not require a separate or independent analysis of the significance of emission reductions in determining RACT. Instead, RACT determinations focus on whether controls are technologically feasible and economically reasonable for that source.

The EPA reviewed Ohio's analysis and confirmed that Ohio evaluated available control options and did not rely solely on existing controls without analysis. Therefore, the EPA finds that Ohio's RACT determinations are consistent with CAA requirements.

*Comment:* The commenter asserted that the EPA failed to provide a reasoned explanation for its economic feasibility determinations, failed to justify cost-effectiveness values or establish a benchmark, failed to explain why certain technologically feasible controls are not economically feasible, failed to consider emission reduction potential in evaluating cost, and relied on conclusions that are inconsistent with prior EPA analyses and cost-effectiveness ranges.

*Response:* The EPA disagrees that the explanation of economic feasibility determinations in the proposed approval is inconsistent with the CAA. Under the CAA, RACT requires implementation of control technologies that are technologically feasible and economically reasonable. The EPA evaluates economic feasibility on a case-by-case, source-specific basis, considering a variety of factors, including, but not limited to, source configuration, emission unit type, control technology, baseline emissions, geographic location, and economic conditions.

The EPA does not establish or apply a cost-effectiveness metric for RACT. The commenter asserts that the EPA chose to apply such a metric. The States may establish and apply their own cost-effectiveness metrics, but the EPA does not adopt these metrics. Instead, the EPA uses cost-effectiveness as one tool to determine whether a control technology is economically reasonable for a specific source. What constitutes reasonable cost-effectiveness varies depending on the characteristics of the source and the control technology.

The EPA reviewed Ohio's source-specific analyses for each non-CTG major source. In each analysis, Ohio evaluated available control technologies, including emission reduction efficiency and associated costs, and determined whether those technologies were economically reasonable for each source. Where Ohio determined that certain technologically feasible controls were not economically reasonable, the EPA reviewed those determinations and found that the record supports those conclusions.

The commenter compares cost-effectiveness values in this action to values from other EPA analyses, including the EPA's "Regulatory Impact Analysis of the Final revisions to the National Ambient Air Quality Standards for Ground-Level Ozone" (September 2015), the Federal Implementation Plan Addressing Regional Ozone Transport for the 2015 Ozone National Ambient Air Quality Standard (88 FR 36654, June 5, 2023), and the EPA's study "The Benefits and Costs of the Clean Air Act from 1990 to 2020: Final Report—Rev. A" (April 2011). Those analyses were developed for different statutory purposes and broader regulatory contexts and do not establish applicable cost benchmarks for source-specific RACT determinations.

The commenter identified each facility specifically and asserted that more stringent controls should have been required. The EPA reviewed the source-specific analyses for these facilities and finds that Ohio evaluated technically feasible control options and associated costs and determined which controls are economically reasonable for each source.

Therefore, the EPA finds that the economic analyses in Ohio's RACT demonstrations satisfy RACT requirements under the CAA.

*Comment:* The commenter also asserted that the EPA failed to ensure that non-CTG sources subject to RACT are subject to sufficient reporting and recordkeeping requirements, that existing requirements are unclear or insufficient to demonstrate compliance, that reliance on deviation reporting is inadequate, that the proposal does not adequately explain how compliance with RACT limits will be enforced, and that the lack of publicly accessible information limits effective enforcement, including citizen enforcement.

*Response:* The EPA disagrees with the commenter's assertions. Ohio has established reporting and recordkeeping requirements for sources subject to RACT through Ohio Administrative Code (OAC) rule 3745–15–03, which the EPA has approved into the Ohio SIP.[3] This rule requires periodic reporting sufficient to demonstrate compliance with applicable limits.

The EPA is not relying on deviation reporting alone to satisfy CAA requirements. Ohio's framework relies on periodic reporting under OAC rule 3745–15–03 along with source-specific permit conditions that are approved into the Ohio SIP. These requirements allow compliance to be determined on an ongoing basis. The emission limitations and associated monitoring, recordkeeping, and reporting requirements in Ohio's SIP and permits are federally enforceable, and information submitted to the State under OAC rule 3745–15–03 is available to the public through applicable public records processes, including the Freedom of Information Act. The EPA reviewed Ohio's SIP and permitting framework and finds that it provides enforceable mechanisms to ensure compliance.

Thus, the EPA finds that Ohio's reporting and permitting requirements are sufficient to meet the CAA and regulatory enforceability requirements.

## II. Final Action

The EPA is approving the following as meeting RACT in the Cleveland Moderate nonattainment area for the 2015 ozone standard:

### *Cleveland-Cliffs Cleveland Works*

- $NO_X$ RACT—the following provisions, as detailed in permit numbers P0138036, P0138136, and P0138521, issued 11/13/2025, effective 11/13/2025:

[2] 44 FR 53762 (September 17, 1979).

[3] 91 FR 2308, (January 20, 2026).

• Reheat Furnaces (P046–P048): Requirement to submit updated $NO_X$ RACT study per 3745–110–03(J) if $NO_X$ emissions exceed 348.3 tpy per furnace on a 12-month rolling average.

• Batch annealing Furnaces (P049 and P050): Continued operation of existing LNBs and compliance with existing $NO_X$ limit of 0.10 lb/MMBtu.

• HDGL Annealing Furnace (Unit P071): Continued use of the existing LNBs and compliance with the 0.23 lb/MMBtu $NO_X$ limit.

• Blast Furnaces (P903 and P904): Continued use of low-$NO_X$ BFG; Casthouse and Flare—install, maintain, and operate the source in accordance with manufacturer specifications and with good operating practices for the control of $NO_X$ emissions; Blast furnace stoves—Continued compliance with existing $NO_X$ limit of 0.06 lb/MMBtu.

• Basic Oxygen Furnaces and Ladle Preheaters (P905/P906 and P925/P926): BOFs—install, maintain, and operate the source in accordance with the manufacturer's specifications and with good operating practices for the control of $NO_X$ emissions; Ladle Preheaters—Continued use of the existing inherently low-$NO_X$ burners and continued compliance of the site-specific $NO_X$ limit of 0.10 lb/MMBtu.

• VOC RACT—the following provisions, as detailed in permit numbers P0138035, P0138036, and P0138136, issued 11/13/2025, effective 11/13/2025:

• Combustion Units (B001–B007, B046–B050, P903–P906): Operate the source in accordance with the manufacturer's specifications and with good operating practices for the control of VOC emissions.

• Tandem Mill (P107): Continued operation of chevron-style oil demister in accordance with good engineering practices; Compliance with existing VOC BAT limit of 138.91 tons per rolling 12-month period; Compliance with the following VOC content limits for rolling oils—Rolling Oil: ≤4.6 lb VOC/gal, Rust Preventive Oil: ≤3.3 lb VOC/gal, Anti-Galling Material: ≤1.2 lb VOC/gal, and Pre-Lube Oil: ≤0.8 lb VOC/gal.

*Henkel:* Continued current operational practices of utilizing low-VOC materials and the use of condenser systems to reduce VOC emissions by 85% percent, as detailed in permit number P0138691, issued 11/18/2025, effective: 11/18/2025.

*Lubrizol:* Continued compliance with site-specific RACT under OAC 3745–21–09(LL) for all process reactor vents; use of submerged filling and venting to a thermal oxidizer achieving greater than 98% percent VOC control efficiency for the drum/tote filling operations; and implementation of existing controls, emission limits, and work practices for the loading racks as detailed in permit number P0138405, issued 10/01/2025, effective 10/01/2025.

In accordance with 5 U.S.C. 553(d), EPA finds there is good cause for these actions to become effective immediately upon publication. This is because a delayed effective date is unnecessary due to the nature of this SIP revision, which merely makes Federally enforceable requirements that are already applicable to the sources at the State level. The immediate effective date for this action is authorized under section 553(d)(3), which allows an effective date less than 30 days after publication "as otherwise provided by the agency for good cause found and published with the rule." The purpose of the 30-day waiting period prescribed in section 553(d) is to give affected parties a reasonable time to adjust their behavior and prepare before the final rule takes effect. Today's rule, however, does not create any new regulatory requirements such that affected parties would need time to prepare before the rule takes effect. Rather, today's rule makes federally enforceable regulatory requirements that are already applicable to these sources at the State level. For this reason, EPA finds good cause under 5 U.S.C. 553(d)(3) for these actions to become effective on the date of publication of these actions.

## III. Incorporation by Reference

In this rule, the EPA is finalizing regulatory text that includes incorporation by reference. In accordance with requirements of 1 CFR 51.5, the EPA is finalizing the incorporation by reference of the Ohio Permits described in section II of this preamble and set forth in the amendments to 40 CFR part 52 below. The EPA has made, and will continue to make, these documents generally available through *https://www.regulations.gov*, and at the EPA Region 5 Office (please contact the person identified in the **FOR FURTHER INFORMATION CONTACT** section of this preamble for more information). Therefore, these materials have been approved by the EPA for inclusion in the SIP, have been incorporated by reference by the EPA into that plan, are fully federally enforceable under sections 110 and 113 of the CAA as of the effective date of the final rulemaking of the EPA's approval, and will be incorporated by reference in the next update to the SIP compilation.[4]

## IV. Statutory and Executive Order Reviews

Under the CAA, the Administrator is required to approve a SIP submission that complies with the provisions of the CAA and applicable Federal regulations. 42 U.S.C. 7410(k); 40 CFR 52.02(a). Thus, in reviewing SIP submissions, the EPA's role is to approve State choices, provided that they meet the criteria of the CAA. Accordingly, this action merely approves State law as meeting Federal requirements and does not impose additional requirements beyond those imposed by State law. For that reason, this action:

• Is not a significant regulatory action subject to review by the Office of Management and Budget under Executive Order 12866 (58 FR 51735, October 4, 1993);

• Is not an Executive Order 14192 (90 FR 9065, February 6, 2025) regulatory action because this action is not significant under Executive Order 12866;

• Does not impose an information collection burden under the provisions of the Paperwork Reduction Act (44 U.S.C. 3501 *et seq.*);

• Is certified as not having a significant economic impact on a substantial number of small entities under the Regulatory Flexibility Act (5 U.S.C. 601 *et seq.*);

• Does not contain any unfunded mandate or significantly or uniquely affect small governments, as described in the Unfunded Mandates Reform Act of 1995 (Pub. L. 104–4);

• Does not have federalism implications as specified in Executive Order 13132 (64 FR 43255, August 10, 1999);

• Is not subject to Executive Order 13045 (62 FR 19885, April 23, 1997) because it approves a State program;

• Is not a significant regulatory action subject to Executive Order 13211 (66 FR 28355, May 22, 2001); and

• Is not subject to requirements of section 12(d) of the National Technology Transfer and Advancement Act of 1995 (15 U.S.C. 272 note) because application of those requirements would be inconsistent with the CAA.

In addition, the SIP is not approved to apply on any Indian reservation land or in any other area where the EPA or an Indian Tribe has demonstrated that a Tribe has jurisdiction. In those areas of Indian country, the rule does not have Tribal implications and will not impose substantial direct costs on Tribal

[4] 62 FR 27968 (May 22, 1997).

governments or preempt Tribal law as specified by Executive Order 13175 (65 FR 67249, November 9, 2000).

This rule is exempt from the Congressional Review Act because it is a rule of particular applicability.

Under section 307(b)(1) of the CAA, petitions for judicial review of this action must be filed in the United States Court of Appeals for the appropriate circuit by August 25, 2026. Filing a petition for reconsideration by the Administrator of this final rule does not affect the finality of this action for the purposes of judicial review nor does it extend the time within which a petition for judicial review may be filed, and shall not postpone the effectiveness of such rule or action. This action may not be challenged later in proceedings to enforce its requirements. (See section 307(b)(2).)

**List of Subjects in 40 CFR Part 52**

Environmental protection, Air pollution control, Incorporation by reference, Intergovernmental relations, Nitrogen oxides, Ozone, Volatile organic compounds.

Dated: June 15, 2026.

**Anne Vogel,**

*Regional Administrator, Region 5.*

For the reasons stated in the preamble, title 40 CFR part 52 is amended as follows:

## PART 52—APPROVAL AND PROMULGATION OF IMPLEMENTATION PLANS

■ 1. The authority citation for part 52 continues to read as follows:

**Authority:** 42 U.S.C. 7401 *et seq.*

■ 2. In § 52.1870, the table in paragraph (d) is amended by:

■ a. Adding four entries for "Cleveland-Cliffs Cleveland Works" before the entry for "Excello Specialty";

■ b. Adding an entry for "Henkel" before the entry for "Hilton Davis"; and

■ c. Adding an entry for "Lubrizol" before the entry for "Luria Brothers".

The additions read as follows:

**§ 52.1870 Identification of plan.**

* * * * *

(d) * * *

EPA-APPROVED OHIO SOURCE-SPECIFIC PROVISIONS

| Name of source | No. | Ohio effective date | EPA approval date | Comments |
|---|---|---|---|---|
| * * | | * | * * | * * |
| Cleveland-Cliffs Cleveland Works. | P0138035 | 11/13/2025 | 6/26/2026, 91 FR [INSERT ***FEDERAL REGISTER*** PAGE WHERE THE DOCUMENT BEGINS]. | Only sections C.1.b)(1)e., C.1.b)(2)a., C.1.d)(2), C.1.d)(3), C.1.d)(4), C.1.e)(2), C.1.e)(3), C.1.e)(5), C.1.f)(1)d., C.1.f)(1)f., and C.1.f)(2). |
| Cleveland-Cliffs Cleveland Works. | P0138036 | 11/13/2025 | 6/26/2026, 91 FR [INSERT ***FEDERAL REGISTER*** PAGE WHERE THE DOCUMENT BEGINS]. | Only sections C.1.b)(1)i., C.1.b)(1) j., C.1.b)(1) k., C.1.b)(2)g., C.1.b)(2)h., C.1.d)(6)., C.1.d)(7)., C.1.e)(6), and C.1.f)(1)g. |
| Cleveland-Cliffs Cleveland Works. | P0138136 | 11/13/2025 | 6/26/2026, 91 FR [INSERT ***FEDERAL REGISTER*** PAGE WHERE THE DOCUMENT BEGINS]. | Only sections B.11., C.1.b)(1)g., C.1.d)(7), C.1.e)(5), C.2.b)(1)g, C.2.d)(9), C.2.e)(6), C.3.b)(1)e., C.3.d)(4), C.3.e)(4), C.4.b)(1)f., C.4.d)(9), C.4.e)(6), C.5.b)(1)d., C.5.b)(1)e., C.5.b)(1)f., C.5.b)(2)d., C.5.d)(4), C.5.d)(5), C.5.e)(4), C.5.e)(5), C.5.e)(6), C.5.f)(1)e., C.6.b)(1)d., C.6.b)(1)e., C.6.b)(1)f., C.6.b)(2)d, C.6.d)(3), C.6.e)(4), C.6.f)(1)b, C.7.b)(1)h., C.7.b)(1)i., C.7.b)(1)j., C.7.b)(2)f., C.7.d)(5), C.7.d)(6), C.7.d)(7), C.7.e)(6), C.7.e)(7), C.7.f)(1)e., C.8.b)(1)e., C.8.b)(1)f., C.8.b)(1)g., C.8.b)(2)e., C.8.d)(2), C.8.d)(3), C.8.e)(4), C.8.e)(5), C.8.f)(1)d., C.9.b)(1)e., C.9.b)(1)f., C.9.b)(2)f., C.9.d)(3), C.9.e)(4), and C.9.f)(1)e. |
| Cleveland-Cliffs Cleveland Works. | P0138521 | 11/13/2025 | 6/26/2026, 91 FR [INSERT ***FEDERAL REGISTER*** PAGE WHERE THE DOCUMENT BEGINS]. | Only sections C.1.b)(1)e., C.1.b)(1)f., C.1.b)(2)c., and C.1.f)(1). |
| * * | | * | * * | * * |
| Henkel ...................................... | P0138691 | 11/18/2025 | 6/26/2026, 91 FR [INSERT ***FEDERAL REGISTER*** PAGE WHERE THE DOCUMENT BEGINS]. | Only sections B.4., C.1.b)(1).g., C.1.c)(2), C.1.d)(5), C.1.e)(7), C.1.f)(2), C.2.b)(1)f., C.2.c)(2), C.2.d)(6), C.2.e)(7), C.2.f)(2), C.3.b)(1)g., C.3.c)(2), C.3.d)(5), C.3.e)(7), C.3.f)(2), C.4.b)(1)g., C.4.c)(4), C.4.d)(5), C.4.e)(6), C.4.f)(2), C.5.b)(1)j., C.5.c)(3), C.5.d)(6), C.5.e)(9), C.5.f)(2), C.6.b)(1)d., C.6.c)(2), C.6.d)(2), C.6.e)(4), C.6.f)(3), C.7.b)(1)d., C.7.c)(2), C.7.d)(2), C.7.e)(4), and C.7.f)(3). |

EPA-APPROVED OHIO SOURCE-SPECIFIC PROVISIONS—Continued

| Name of source | No. | Ohio effective date | EPA approval date | Comments |
|---|---|---|---|---|
| * * | | * | * * | * * |
| Lubrizol | P0138405 | 10/01/2025 | 6/26/2026, 91 FR [INSERT ***FEDERAL REGISTER*** PAGE WHERE THE DOCUMENT BEGINS]. | Only sections B.2, B.3., B.4., B.5., C.1.b)(1)b., C.1.b)(2)a., C.1.d)(1), C.1.e)(1), and C.1.f)(2). |
| * * | | * | * * | * * |

* * * * *

[FR Doc. 2026–12920 Filed 6–25–26; 8:45 am]

BILLING CODE 6560–50–P

## ENVIRONMENTAL PROTECTION AGENCY

### 40 CFR Part 52

**[EPA–R05–OAR–2025–0032; FRL–13008–02–R5]**

### Air Plan Approval; Ohio; Source-Specific Non-CTG RACT and SIP Strengthening for Ohio

**AGENCY:** Environmental Protection Agency (EPA).

**ACTION:** Final rule.

**SUMMARY:** The Environmental Protection Agency (EPA) is approving source-specific State Implementation Plan (SIP) revisions submitted by Ohio. These revisions address major source volatile organic compound (VOC) and nitrogen oxide ($NO_X$) reasonably available control technology (RACT) requirements for the Cleveland, OH Moderate nonattainment area for the 2015 ozone National Ambient Air Quality Standard (NAAQS or standard). The affected facilities include PPG Industries Ohio, Inc. (PPG), Owens Corning, Akron Paint and Varnish, Charter Steel, U. S. Steel Tubular Lorain, Carmeuse Lime, and Ross Incineration. The EPA is also approving source-specific SIP revisions for General Electric Aviation Evendale and Tyson Foods for the Cincinnati maintenance area for the 2015 ozone standard. Finally, the EPA is rescinding the source-specific VOC RACT rule for Formica Corporation since it is subject to an equivalent CTG-based rule in the Ohio Administrative Code (OAC). The EPA proposed to approve this action on February 27, 2026, and received five comments.

**DATES:** This final rule is effective on June 26, 2026.

**ADDRESSES:** The EPA has established a docket for this action under Docket ID No. EPA–R05–OAR–2025–0032. All documents in the docket are listed on the *https://www.regulations.gov* website. Although listed in the index, some information is not publicly available, *i.e.,* Confidential Business Information (CBI), Proprietary Business Information (PBI), or other information whose disclosure is restricted by statute. Certain other material, such as copyrighted material, is not placed on the internet and will be publicly available only in hard copy form. Publicly available docket materials are available either through *https://www.regulations.gov* or please contact the person identified in the **FOR FURTHER INFORMATION CONTACT** section for additional information.

**FOR FURTHER INFORMATION CONTACT:** Katie Caskey, Air and Radiation Division (AR18J), Environmental Protection Agency, Region 5, 77 West Jackson Boulevard, Chicago, Illinois 60604, telephone number: (312) 353–3490, email address: *caskey.kathleen@epa.gov.*

**SUPPLEMENTARY INFORMATION:** Throughout this document whenever "we," "us," or "our" is used, we mean the EPA.

## I. Background Information

On February 27, 2026 (91 FR 9771), the EPA proposed to approve source-specific SIP revisions that address major source VOC and $NO_X$ RACT requirements for the Cleveland, OH 2015 ozone Moderate nonattainment area. The EPA also proposed to approve source-specific SIP revisions for major sources in the Cincinnati, OH 2015 ozone maintenance area as SIP strengthening measures. The EPA proposed to rescind the source-specific VOC RACT rule for Formica Corporation since it is subject to an equivalent CTG-based rule in the OAC. The EPA is incorporating by reference Ohio rules 3745–21–09(MM), 3745–110–03(Q), and OAC 3745–110–03(P) in this action. An explanation of the Clean Air Act (CAA) requirements, a detailed analysis of the revisions, and the EPA's rationale for proposing approval were provided in the notice of proposed rulemaking and will not be restated here. The public comment period for this proposed rule ended on March 30, 2026. The EPA received three supportive comments, one of which included recommendations, and two adverse comments.

*Comment:* One commenter recommended disapproving the rule based on concerns about the ability of the EPA to fulfill its mission. The commenter further suggested that regulated sources should be shut down until air quality meets the strictest clean air standards.

*Response:* The EPA disagrees with the commenter's recommendation. This action is limited to evaluating whether the SIP revisions submitted by Ohio satisfy applicable requirements of the CAA, including the requirement to implement RACT for VOC and $NO_X$ sources under CAA sections 182(b)(2) and 182(f). The commenter does not provide information relevant to the EPA's evaluation of whether the submitted RACT determinations meet statutory and regulatory requirements. The EPA's role in this action is not to require shutdown of sources, but to evaluate the State's RACT determination in accordance with CAA requirements. The EPA finds that the submitted RACT determinations meet applicable CAA requirements and will contribute to continued improvement in air quality.

*Comment:* Another commenter generally supported the EPA's approval but recommended greater transparency regarding cost-effectiveness thresholds. The commenter also recommended periodic reevaluation of RACT of every five years or during title V permit renewals to reflect advances in control technology.

*Response:* The EPA appreciates the commenter's support of the proposed rulemaking. RACT determinations are case-specific and must consider technological and economic feasibility for each source. The EPA has not established a uniform cost-effectiveness threshold applicable across all sources and geographic areas. Cost-effectiveness